Next case for argument Lazier v. Colvin, Mr. Horne. Your Honors, Counsel, Ladies and Gentlemen, I'm John Horne. I represent Plaintiff Appellant Ryan Lazier. The principal question with respect to the RFC in this case is, when does examiner mean non-examiner? The ALJ in this case used the word examiner ten times to describe two non-examining physicians on whose opinions he relied in formulating the RFC and in brushing off the opinion of the treating physician who'd seen claimant approximately 31 times as of the time he issued his opinion. Now the government has called this nitpicking and plaintiff's rejection of a commonsensical interpretation, but ten times using examiner means examiner. So are you saying that the administrative law judge was actually deceived and thought all these people had examined your client, or was it just an awkward use of words? I say he didn't understand what they were doing, because he used it ten times. And you yourself... What do you mean didn't understand? That was my question. Do you think he thought they actually had examined Lazier? Yes, because he used the word examiner. That's what examiner means. And what else is there to go on except government speculation that he meant otherwise? In a similar context, last month, Judge, you yourself wrote... All of us write for the whole court. Right. Very good. Herman versus Colvin, 1336-24. The government's lawyer admitted this error at the oral argument, but speculated it was a Scrivener's error, that the administrative law judge had meant something other than he No, no, that was a completely different case. That was the question which doctor the administrative law judge was talking about when he used the wrong name, right? Exactly. But it's the same situation. This is possible, but we can't assume it to be true on the basis of the lawyer's speculation. And in that case, the mistake was made once. Here it was made ten times. The government tries to argue on page 39 and 40 of its brief that somehow state agency examiner means something different than consultative examiner. And that there's also... I think the district court said that he never referred to these... No, it's never referred to the two doctors in question other than state agency doctors. Well, that's not true either. On page 6 of ALJ's decision, that's 21 of the court record, this examiner, this examiner, this examiner, the first state agency examiner, the second examiner, the first state agency examiner, this examiner. So since he didn't refer to them any other way, there's no basis for thinking that he didn't think they'd examine him. This examiner could be someone who just examined records, right? They did do this, these doctors, right? They looked at something. The appropriate way to refer to them, though, is as non-treating, non-examining state agency sources. That's kind of cumbersome. It's cumbersome, but they're non-examiners. It depends what you mean by an examiner. Exactly. And examiner can't mean non-examiner. The pertinent regulation, 20 Code of Federal Regulations, 404.15.27, sets out the hierarchy of weight to be given treating sources. Should we draw any conclusions from the ALJ's use of the phrase consultative examiner? When referring to Dr. Brewer? Well... Just examiner for the folks who didn't actually examine Mr. Lazear? All consultative means is he was from outside the agency. That doesn't necessarily, that doesn't, it doesn't mean, examiner means examiner, whether it's a state agency examiner or consultative examiner. Furthermore, the actual examiner, Dr. Brewer, indicated that Lazear was somewhat impaired in attention and concentration. He didn't mention drugs and alcohol. He observed that Lazear was depressed and diagnosed him as bipolar. That's at least as consistent with the opinion of, those observations are at least as consistent with the opinion of the... But do you think all bipolar people, used to be called manic depressives, do you think all of them are totally disabled within the meaning of the social security disability statute? Probably not. No, just the fact that he diagnosed him as bipolar doesn't mean that he was disabled. All I'm saying is that the observations of the actual examiner support the opinion of the treating physician as much as they support the opinion of the non-examining state agency sources. And then the... Are you saying Dr. Brower or Brewer's findings amount to disability? No. He was stopped pretty clearly short of that, didn't he? Well yes, but we basically have Dr. Brower's observations rather than a full scale opinion, an articulate opinion about Lazear's ability to maintain concentration, to what degree he was impaired, whether he could complete a normal work day or work week. We don't have any of those opinions that we get from the non-treating, non-examining state agency sources. In taking, in formulating RFC, the ALJ also had to consider Lazear's credibility and he really didn't discredit, he didn't properly discredit Lazear. He didn't go into the details of what work he was seeking or what that community service was. Last summer, Murphy v. Colvin came down that said it's necessary to explore, to inquire as to what the facts are. In that case, the ALJ treated a vacation as if it had been running with the bulls at Pamplona and the court sent it back for, to be considered. So because the ALJ got the credibility determination wrong, and... If the ALJ had inquired about the community service, what would the answer have been? The answer would have been that he was permitted to take breaks as necessary. What kind of work was he doing? He was doing custodial work and that he could take breaks whenever he wanted to. And if you take breaks whenever you want to, that's disabling. If you're off task, 8 to 15 percent. The ALJ not only failed to inquire about those matters, he did, he was left with nothing but the objective medical evidence to support him. And of course, that alone can't support a discrediting claimant according to 96-7-P, Social Security ruling. If there are no more questions... Where is all this stuff about the 10 examiners? I don't get that. He called non-examiners, examiners, 10 times. I don't see that. He talks about, you know, he talks about a psychiatrist who looks at medical interrogatory. These people aren't being described as having conducted physical examinations. It wasn't Dr. Biscardi. I'm not saying he described Dr. Biscardi as an examiner. Who is someone who is described as an examiner and didn't examine? Dr. Heinrich and Dr. Hudspeth. Where's the discussion of, what, Heinrich? Where's that? By the ALJ? Yeah. At page 6 of the decision, it's also numbered by the district court 21, down at the bottom. Page 6? Page 6 up at the top. Page 6 at the top. And what are you... Yeah, that's where it says a state agency psychiatric assessment was conducted. Not it indicates whether that's a, you know, personal examination, right? No, it doesn't. It doesn't specifically say it was a personal examination. This examiner cited the findings of the consultative examiner, right? Correct. I don't see where it indicates... Again, we have the second state agency assessment, and this examiner cited the findings of the consultative examiner, right? So it looks as if he's, you know, looking at the findings of other people. I don't see why an actual examiner could have done the same thing. The problem is the use of the word examiner. Examiners get different weight than non-examiners. Okay. Well, thank you, Mr. Hall and Mr. Ben. Ms. Bence, I'm sorry. May it please the Court? This is a case where a claimant has a dual diagnosis of substance abuse and bipolar disorder, and the key question is whether, based on several years of evidence when the claimant's substance abuse disorder was in complete remission, the ALJ reasonably determined that he could still perform a limited range of work with appropriate accommodation for his mental impairments. Mr. Lazier has hung his argument largely on the question of whether the ALJ believed that the state agency consultants had conducted an actual examination of the client. There is no such thing as a state agency examiner in the sense of someone who conducts a face-to-face examination of the claimant. They only ever review the evidence. The consultative examiners who do not work for the state agency are outside officials who do conduct a one-time physical examination. So it is clear from the ALJ's decision, when read as a whole, that he understood that Dr. Hudspeth and Dr. Heinrich were state agency consultants. That is actually the technical term that SSA uses to describe the non-reviewing state agency physicians and psychologists is a state agency consultant. That those physicians reviewed the evidence, reviewed Dr. Brower's consultative treatment notes when he actually did consult the examination, and he gave significant weight to them, but only in the context of giving most weight to Dr. Brower's conclusion that Mr. Lazier's condition had stabilized at a level where he had his concentration and attention was somewhat impaired, but his other mental functions were intact. And then giving significant weight also to the medical opinions of non-examining experts who submitted medical interrogatories, both that the objective evidence, including treatment notes from the treating psychiatrist and Dr. Brower's consultative examination, indicated that the opinion that the treating physician gave was inconsistent with her treatment notes, and that despite the impaired concentration and a moderate inability to adapt to changes in the workplace, Mr. Lazier retained the mental residual functional capacity to perform unskilled work that didn't involve significant changes in the workplace. The ALJ is not simply taking his own opinion here, he is looking at the evidence as a whole, and drawing conclusions from the evidence and the opinions of one examining and four non-examining psychologists, the treatment notes, and then opposed to the opinion of one treating psychiatrist. That is exactly what the ALJ is supposed to do. Look at the evidence, know where there are inconsistencies, and resolve the inconsistencies. That's entirely within his job as an administrative law judge. Mr. Lazier also complained that the ALJ did not appropriately assess his credibility. Again, that is incorrect. The ALJ's obligation is to look at the evidence and ground his determination that the claimant, in this instance finding he was not entirely credible, in the evidence in the record. The ALJ did that on numerous occasions. He found, for example, that the claimant's statement that he left his job for reasons that had nothing in 2004, that had nothing to do with his drug use, was untrue. He found that the claimant's statement that he stopped looking for work once he was diagnosed with bipolar disorder was inconsistent with the evidence that he continued throughout the period at issue in this case to look for work that was both physically and mentally demanding. Again, he noted that he accepted the opinions of the medical doctors that refuted Mr. Lazier's statements that he simply couldn't concentrate for hours at a time and had to nap for hours during every day. The medical experts who examined the evidence indicated that he could function at a level which allowed him to perform substantial gainful activity. If the court has no additional questions, I will rest on the arguments in our brief. Thank you. Thank you, Ms. Pence. Mr. Horn, do you have anything for us? With respect to a dual diagnosis, that means that the bipolar disorder would be there regardless of the use of drugs and alcohol. The ALJ disregarded most of Lazier's testimony because he did testify that all he sought was part-time work and you've got to be able to work full-time to be employable in the national economy. The ALJ had to give specific reasons for discrediting claimant and all of the reasons he gave were bad ones. With respect to the rejection of the treating physician's opinion, this court handled it in Herman once again last month. It doesn't require corroboration for the physician's opinion and it doesn't have to coincide with the opinion of other physicians. So, unless there are any questions, thank you. Thank you very much, Mr. Horn and Ms. Pence.